BETTY ARONSON *vs.* METROPOLITAN TRANSIT AUTHORITY.

Norfolk.    November 3, 1959. — January 12, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Negligence,* Street railway: sudden stop.

In an action against a street railway for personal injuries sustained by a passenger on a car travelling on a reservation intersected by public crossings, where there was evidence that the motorman was talking to another passenger when the car left a regular stopping place and that a short distance beyond, while the plaintiff was standing firmly grasping a pole and as the car approached such a crossing at twenty-five miles an hour, it stopped so suddenly as to break the plaintiff's grasp on the pole and throw her to the floor, there was no error in instructions to the jury that the burden was on the plaintiff to prove negligence on the part of the motorman, that the "only theory" on which she could recover was if she was in a position where she could observe conditions ahead of the car and "did look out" and "saw nothing," and that if she was not in such a position there was "no evidence of negligence" of the motorman and she could not recover.

TORT.    Writ in the Superior Court dated January 25, 1957. The action was tried before *Nagle,* J.

*William B. Sleigh, Jr., (Max J. Zieman* with him,) for the plaintiff.

*Charles W. Mulcahy, Jr.,* for the defendant.

COUNIHAN, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff as a result of alleged negligence of the defendant, by its servants or agents. It was tried to a jury who found for the defendant. The action comes here upon exceptions of the plaintiff to parts of the judge's charge and to the exclusion of evidence. There was no error.

The evidence of the plaintiff tended to show that she boarded the first car of a two car train of the defendant at the Park Street station in Boston and sat in the rear seat of that car. The train was bound for Cleveland Circle and ultimately travelled along Beacon Street, Brookline, in a reservation for street cars which was intersected by public streets or crossings for automobiles. As the train approached the stop at Coolidge Corner the plaintiff left her seat and moved forward in the car preparatory to leaving the car at the stop at Winchester Street which was two blocks beyond Harvard Street at Coolidge Corner. She stood in the aisle holding onto the second pole from the front on the right hand side of the car with a firm grasp of her right hand. She was partly facing the side of the car with her feet slightly apart. The train stopped at Harvard Street to discharge passengers, started up again and continued on the reservation. The railway tracks rested upon a dirt surface. In this reservation were outbound and inbound tracks and the reservation extended three and one half to four feet to the right of this train as it travelled. The car overhung the outer rail of the track about twenty inches. Between Harvard Street and Winchester Street, Center Street crossed the reservation and Beacon Street at an opening in the reservation over which automobiles and pedestrians travelled. The train was travelling about twenty-five miles an hour. The plaintiff was looking around in the car not paying attention to anything in particular, "'just looking out,'

not out the front windows or the side windows" of the car. There was a series of two or three sudden jerks and jolts in rapid succession which were so abrupt as to swing her around in an arc toward the front of the car, breaking her grasp on the pole and throwing her to the floor, and she sustained injury. The plaintiff testified that when the train left Coolidge Corner she saw the motorman talking to a passenger standing by the front right door. This was all the evidence on liability on behalf of the plaintiff.

There was testimony from the motorman called by the defendant that when the train was twelve or thirteen feet from the Center Street crossing a young woman suddenly stepped in front of it from the right. The motorman put on his emergency brakes and brought the car to a sudden stop. He did not see where this young woman came from and he at no time was talking to a passenger standing in the front of the car. His train was then travelling about ten miles an hour.

The parts of the judge's charge to which the plaintiff excepted were in substance that if the plaintiff was not in a position where she could see out the front of the car and observe the roadbed or conditions of traffic directly ahead of the car she could not recover. He specifically said, "If you find, however, that Mrs. Betty Aronson was in a position, and I say that this is the only theory under which she may recover . . . where she could see out the front of that car and that she did look out and that she saw nothing; if you believe that testimony and you find that there was no woman stepping in front of that car, then and only then would this lady . . . be entitled to recover. . . . Now, if you find that this lady was not in a position to see, then I say there is no evidence of negligence on the part of this defendant, and I so rule." The judge also charged that the burden of proof was on the plaintiff to show negligence on the part of the motorman.

The charge of the judge was substantially in accord with the principles of law set forth in *Cuddyer* v. *Boston Elev. Ry.* 314 Mass. 680, where, with ample citation of authority, it

was said at page 682, "[H]ere there was evidence of the firmness with which the plaintiff . . . was standing, of her firm grasp upon the back of the seat, and of the physical consequences of the sudden stop upon her and others, from which we assume without deciding that the jury might infer that the stop was of such unusual suddenness and violence as to be evidence of negligence, if it was not caused by some traffic emergency. . . . But although the stop was sudden, unusual and violent, it does not appear that it was not made necessary by some traffic emergency that arose suddenly and could not have been guarded against by due care on the part of the motorman. . . . If it had appeared that the stop was due to a collision or impending collision, the nature of the stop without more would not have warranted a finding that the motorman was negligent." We think that this case is decisive of the issues in the instant case.

The plaintiff relies upon *Gray* v. *Boston Elev. Ry.* 251 Mass. 167, but in the *Cuddyer* case at pages 684 and 685 the *Gray* case is analyzed and distinguished because in that case a passenger on an elevated train was injured when it stopped with a "terrible jerk" and the passengers were thrown partly out of their seats. It was said in the *Cuddyer* case at page 685, quoting the *Gray* case at page 169, "The considerations which determined the judgments in the cases cited, and in similar cases, are not applicable where the railroad is operated upon its own private location. . . . In such a case there is a duty of explanation which the defendant must assume if the incident is one such as in the ordinary course of things does not happen if those who have the management of the train use proper care." On the same page in the *Cuddyer* case it was also said, "In the present cases the street car was running, not on a private location or reservation, but on [or across] a public street, where it was subject to obstruction by vehicles and pedestrians."

The evidential exception was to the exclusion of evidence to show the expense of treatments of the plaintiff by a chiropractor on the ground that the practice of chiropractic is illegal in this Commonwealth. This question bore upon

damages only and in view of the verdict for the defendant on the merits we need not consider it.

*Exceptions overruled.*